The next case is Combier v. Portelos. Elizabeth Combier Good morning, Your Honors. My name is Elizabeth Combier, and I'm not an attorney. I'm pro se standing before you, so I'm being a little nervous, so I might read from some comments that I have. The attorneys are nervous. I may. Okay, thank you. The issue that I want to delve into today that I'm asking for a moment is, did the district court make an error in deciding that this case was essentially a dispute between private parties competing to represent tenured New York City public school teachers in disciplinary hearings 3020A? I say yes, an error was made. The mastermind of the mob that has harassed and come after me for four years, Francisco Portelos is a state actor. In this proceeding, in my case, in all that he has done, he is a computer hacker and an excellent expert in the computer. There is no question that he is a very knowledgeable computer expert, but he uses it for harm. He and his group, UFT Solidarity, are angry educators who have been disciplined. They have grieved and lost, and they're angry. They feel they don't have a voice, and they're out to get anybody that challenges them in any way, and I did challenge Francisco on his lies that he puts out in cyberspace in 2015. He went after me. In order to complete his group and his mob in the cyberspace, he needed legitimacy. Two things he has. Number one, he's a state actor. He's a teacher. He's an educator. He teaches STEM, computer technology, and science, and he's considered a good teacher, and he had that behind him. If he wasn't an educator, we'd be ships passing in the night. I have no, I'm not in competition with anyone at any time. He's a teacher. I work with teachers and parents, and I'm a public school parent of four children. He needed, the second thing that he needed was legitimacy. What he needed was a lawyer to get into his mob that he created and help him achieve the level of standing out there that he could do what he wanted, and Brian Glass and Jordan Harlow jumped on that ship. Can I just ask a question about your argument? You may have a very valid state law claim against these two individuals and perhaps others, but as you know, we have to figure out whether he was a state actor. You say he was a teacher, but other than the fact that he was a teacher, how did he use his position? How is his position as a teacher connected to the harms that you allege that he inflicted on you, the hacking and other things? In the public arena, which I'm a member because I'm a parent of four kids, and I write about education and I help parents, a teacher is a role model. There is no line when they leave the school building at 2.45 or 3.15 and they go home and they kill their dog or have sex with a kid or even get drunk in a bar that they become a private citizen. I disagree with anything to do with that, and I've spoken to countless teachers about that. Where does the line get drawn? What can a teacher do at home? Francisco Portelas has made it very clear that if he is not in the classroom teaching to his students, he can do anything he wants. It doesn't matter. He's very clear about that in his writing. On his website, he always makes sure that people know that nothing he does is in any way illegal, and I'll give you an example. He put the name of a girl who got her grades changed at a school on the internet and let it out there. When he was asked to come into a disciplinary meeting at OSI, he said, oh, I'll just take it down, that's okay. And when they didn't file a report saying he was guilty, he sued them in the Supreme Court saying, you can't say that. I didn't violate FERPA at all. I did that in my own time. Where does the line go? I don't know. It hasn't been defined, but certainly you don't not become a teacher when you go home and you do something bad. And as a matter of fact, just, I don't know. I don't know. I don't know. A couple of days ago, on September 23rd, the United States Department of State issued a joint statement on advancing responsible state behavior in cyberspace, and they asked for about, it looks like, 12 countries to join them in a statement on creating responsible behavior on the internet globally. The internet is not state-bounded. Francisco's lies about me have gone throughout America and the world, and he put my phone number out on the internet so that people could call me night and day for the last four years. Ms. Combier, your time is, you're reserving some time for rebuttal, three minutes of rebuttal. Do you want to use some of that time now, or would you prefer to speak after you've heard from the lawyers here? Yes, I would like to take one minute of my three minutes. Lucio Selle is the excellent liar without a conscience that Francisco needed to complete his plan, and I have never practiced law. I didn't steal his $1,000. I never stole my husband's account at all. I cannot keep up with the amount of lies that come from Lucio Selle, because he makes it up the minute I say anything. Thank you. May it please the Court. My name is Jordan Harlow. I'm appearing on behalf of myself, as well as with my colleague, Brian Glass. Your Honor, I'll be very brief, as we do agree with the findings of Judge Brody. Regarding plaintiff's Section 1983 claim, we agree with Judge Brody's determination that, well, I agree with Judge Brody's determination that I'm not a state actor, I'm a private attorney, and my colleague, Brian Glass, as well as a private attorney. Judge Brody ruled that because Mr. Portellis are not state actors, that we, by association, cannot be state actors. Even in the event that this Court determines that Mr. Portellis and Mr. Selle were acting as state actors, which we disagree with, you know, we were not — it's not alleged that we were acting as their agents. So it's our position that we should not be considered state actors. Regarding plaintiff's other claims, regarding the Computer Fraud and Abuse Act, again, at no point is it alleged that we ever operated as agents of Mr. Portellis and Mr. Selle. It's not alleged that we authorized or directed either of these individuals to engage in any of the alleged conduct, nor is it alleged that we directly interfered or engaged in whatsoever with the plaintiff's computer. And finally, we also agree with Judge Brody's determination that plaintiff has failed to allege damages in the amount of $5,000 over a one-year period. So for all these reasons, we agree with Judge Brody's findings. And if there's any questions, we devote the rest of our time to Your Honors. Thank you. May it please the Court, Kathy Park for the DOE defendants. Your Honors, when you listen to what's really at the bottom of Ms. Colmere's grievances, there can be really no serious dispute that what you really have here is a dispute or controversy among private parties that the DOE really has no role in. And that's the main reason why she's unable to plausibly allege a federal claim against any of the DOE defendants here. But this Court doesn't even need to reach the merits of her claims against DOE defendants, because as the district court correctly found, she had waived her rights to appeal those claims by failing to specifically object to them. And because she failed to do so as the law requires, the district court rightly applied just a clear standard of review as to those claims, and there's nothing really left for this Court to review on appeal. But again, if this Court were to review the merits of her claims, the dismissal should be affirmed anyway. And just very briefly, I'll walk through her claims. The Section 1983 claims against Chancellor Farina failed because there's no allegation of personal involvement on the Chancellor's part in the complaint. Again, Portellos and Chelley aren't state actors here. The law is very clear that it's not enough just by virtue of one's status as a teacher or by virtue of one's employment that one can be imbued with the color of state law. And there's nothing more that's alleged in this case. And even if the plaintiff was providing illegal legal consultation. Your Honor, even if that could be construed as acting under the color of state law, there's another independent dismissal here. In order to impose liability against the DOE, you need to have a municipal practice policy or custom, and that's not alleged here either. And again, as my colleagues noted, as for the CFAA claim, she hasn't alleged that the DOE or Chancellor Farina has participated in the alleged hacking activity to pull them into the scope of the complaint. And she hasn't pleaded guilty in the case of the statute for liability, and she hasn't adequately pled economic loss as well. If there are no further questions, we'll rest on our briefs. Thank you. Thank you. I just want to address the untruth that I did not object to the memorandum and the order of the judge. And the memorandum of the magistrate. I objected at every point along the way. I don't understand what they're saying, because I did write it. And it's clear to me that I objected, and I'm sorry that they don't see it that way. But I absolutely did object. I did everything I was supposed to do. And your honors, I, again, the DOE, the department has a social media policy that is looked backward. It's not looking forward. It's out of date. It was created in 2013 way after New Jersey and other states already had a social media guideline. They are way behind. New York is way behind. And we have to look toward the future. The CFAA is a law that is timely. It's got to be expanded in its overview. I spent $10,000 trying to get my hacked material back on my blog that Francisco deleted from the back end, astonishingly. I don't know how he did it. I am not computer savvy at all. I know how to write on a computer. But my point is, this is an extremely timely issue of where does the state actor private citizen begin. Because Francisco needed to be a private actor, because he made me into a public concern. That's what he tried to do. I hope he failed. I think he did. But that was his goal, and it's just not true. Thank you. Thank you all for your arguments. We'll take the matter under advisement. And that is the last case on the calendar this morning, so I will ask the clerk to adjourn court. Thank you.